This is Fares Liquor, Inc. and Al v. Etheridge, No. 518-0469. May proceed.  May it please the Court, my name is Katherine Weiler. I represent the appellant, Fares Liquor, in this matter. Circuit Court erred in this case. The Circuit Court dismissed the allegations that were brought by Fares Liquor, deciding that pursuant to the corporate bylaws, Fares Liquor did not have the authority to bring those claims. That is not accurate. This is a straightforward contract case. This Court has the ability to review the corporate bylaws, evaluate whether the Circuit Court's interpretation was accurate, and make its ruling accordingly. That ruling should be to reverse. The operative provision that the Court must review is Section 8 of Article 3 of the bylaws. And the question is, in this situation, when the Board of Directors has been reduced to only one, did the remaining director, in this case Mr. Rowell, have the ability to appoint a replacement member of the Board? He did. Section 8 of Article 3 specifies any vacancy on the Board of Directors may be filled by election at the next annual or special meeting of shareholders. And then it adds, a majority of the Board of Directors may fill any vacancy prior to such annual or special meeting of the shareholders. That provision... So you're suggesting that one constitutes a majority? Yes, Your Honor. And one constitutes a majority pursuant to this section, because this section places no other limitations on the number which would constitute a majority. And there are other provisions in the bylaws which do place those types of restrictions. As has been discussed extensively in the briefing, there is reference to a quorum, which is defined in the bylaws. And a quorum does mandate more than one. In order to have a majority, there must be more than one person to satisfy the quorum requirement. How does one constitute a quorum? It can't constitute a quorum here because of the definition of quorum. And the definition of quorum is also provided in the bylaws. But quorum applies in the circumstances of a meeting. There are separate articles in these bylaws which discuss specific meetings, meetings of shareholders or alternatively meetings of the board of directors. That is not what Article 3, Section 8 discusses exclusively. Article 3, Section 8 discusses the possibility of an appointment outside of the context of a meeting. And that is the critical distinction here. Because there is the possibility of an appointment of a member of the board of directors outside of the context of a meeting, the word quorum is not invoked. It does not apply. It has no meaning to this particular provision of the bylaws. Without the invocation of the word quorum, which is a deliberate decision by the drafter of these bylaws, at that point it is no longer necessary for a quorum as defined under the bylaws to exist in order for this particular provision to be satisfied. Rather, the plain language of the provision states, and I promise I won't read it repeatedly to the panel, but one more time because it is so important, a majority of the board of directors, again not a quorum, just a simple majority, may, a permissive word, not a mandatory word, may, depending on the circumstances, fill any vacancy prior, i.e. in advance of, such annual or special meeting of the shareholders. That single sentence is the dispositive sentence in this case. That single sentence establishes that in this situation, the single remaining member of the board had the ability, as a majority of one, to appoint a new board member. And that's precisely what he did. He appointed a new board member. At that point, the board was fully constituted as is mandated under the bylaws. There must be at least two members of the board. And those two members of the board had the ability to make a decision whether or not to proceed with this litigation. And again, this litigation is against a former member of the board, accusing that former member of the board of breach of fiduciary duty, breach of contract, and conversion. The corporation properly proceeded on those claims. It should have been allowed to continue with this litigation. And the trial court's decision to dismiss by misinterpreting this particular provision of the bylaws should be reversed. If there are no further questions. Thank you. Thank you. Thank you, court, counsel. My name is Eric Terlizzi, and I represent, with respect to this appeal, Travis Etheridge. I also represent Robin Etheridge, who was the subsequent shareholder after Travis conveyed his shares to her on the companion case, which was consolidated with this. I would be remiss if I didn't point out to this court that the assets of this corporation are the furnishings and fixtures and inventory of a local bar in Centralia, probably one of a dozen or more. The record shows that these parties, Jason and Travis, paid $9,000 for the 100% of the outstanding shares of this corporation. This is a glorified small claims case that has been turned into multiple multi-count lawsuits, an appeal that has already exhausted more judicial and attorney and legal expense and time than this corporation is worth. This is not Microsoft or Amazon we're talking about. And so if I sound frustrated, I apologize, but that's why. And we reach this point because there were two co-equal owners, 50% shareholders, two directors, and they had it falling out. And then instead of doing what should have been done, what happened is Mr. Rao demanded that Mr. Etheridge resign. He said, I don't want anything to do with you anymore. Mr. Etheridge, rather than get involved in what ultimately happened anyway, over a $9,000 bar in Centralia, Illinois, said, fine. I'm out of here, I resign as director, I resign as president, I resign as treasurer, and I'm going to turn 50% of the stock over to my mom. Rather, at that point, Mr. Rao said, okay, now we've got a deadline. I've got to sit down with Robin Etheridge, my new partner, and work out something. Either I can buy her out, she can buy me out, we'll sell the whole darn thing, whatever. He appoints his mother unilaterally as director upon the immediate resignation of Travis. I don't mean to take, to differ, but wasn't there a special shareholders meeting called on October 16th of 27 and Robin Etheridge was nominated to act as a director, but that nomination failed, correct? That's exactly correct. Travis, while he was still a shareholder, called that special meeting and she was not voted in. That left, with his resignation, that left one director because she was not voted in. And so what the bylaws then say is you either have a special meeting of shareholders, which is my point. He should have, at that point, sat down with Robin and said, how are we going to work this out? Or what it says is what the plaintiff is trying to argue here is that Section 8 has an unwritten provision that that action can be taken without a quorum. Section 7, which applies, it says manner of acting. It doesn't say manner of acting except for filling vacancies. It says manner of acting for this corporation. It says the act of the majority of the directors present at a meeting at which a quorum is present, which, Your Honors, as already pointed out, is clearly two in this instance, shall be the act of the Board of Directors. It doesn't say except for filling a vacancy appointment. And the only there is a provision in Section 6 that does authorize one particular action of the board that can be taken without a quorum, and that is an adjournment. That's the only. Now, these drafters specifically address the situation of what happens if we can't get a quorum. And they said you can do one thing. You can adjourn the meeting. And clearly what the intent was there was to force these parties to either get along or resolve something, but not to allow one party to unilaterally hijack this corporation. And that is exactly what has happened here. We're going on almost, well, this fall it will be two years that Mr. Rao has assumed complete, exclusive, absolute control of this corporation and his absolute co-equal partner. She owns as much of this corporation as he does, the assets. She is absolutely entitled by law. But he refuses to come to the annual shareholders meetings. So there's no quorum of shareholders. There can be no election to appoint another director. He has since, I guess his mom has resigned as director. Now he's appointing his dad as director apparently. And he continues to do that a matter of record. You know, I think it is, Judge, but regardless, I mean, he still is, it is a matter of record that as of April of 18, or May of 18, following the date for the April annual meeting, Robin had filed an affidavit saying I showed up at the corporate council office in Centralia for the meeting. He didn't show up. No business could be conducted. But somehow he still maintains his vacancy appointment is, I guess, in perpetuity. That my client will never be able to exercise any input or control, or there will never be another election of directors. Obviously this corporation is stalemated and needs to be dissolved pursuant to the Dissolution Act of the corporations. And that is a count that Robin filed, which we'll get to when this case is remanded. But the point is, is that still pending? Pardon me? The dissolution. Yes. Well, I don't know how you could have a more classic case of a stalemate than when one party is completely shut out, except two partners in a law firm and one shows up on Monday morning and the locks have been changed and his name is off the bank account. That, I think, calls for a dissolution. But I'd point out that if you accept the interpretation, then it allows for the situation that occurred here. Anything could have happened, whether it was a death, incapacity, or resignation of a director. The succeeding director could just assume complete and utter control forever, if they're correct. And that's exactly what has happened here, and that's exactly what these clear bylaws state cannot happen. There simply is no language in Section 8, allowing a vacancy appointment that says that action can be taken in any other method other than what Section 7 says as to all actions of this corporation, that it has to be done by a majority at a meeting in which a quorum is present. Now, Section 10 allows informal action of directors if the consent is signed in writing by all directors entitled to vote. So clearly, this nonsense about, oh, we did this outside a meeting, is inappropriate because that section specifically says if you can't vote at a meeting to do what you're going to do, you can't do it informally. And one director could not have voted at a meeting with one director to appoint another director. I'm sorry if I don't mean to cut you off, but doesn't that go back to a question earlier about, in this particular instance, when there's only one board of director, isn't that person the majority? And Section 8 says a majority of the board of directors may fill any vacancy prior to such annual or special meeting of shareholders. And Mr. Rao called a special director's meeting on October 23rd of 17, and as the majority director elected Barbara Rao as the other member, correct? Well, I think that's clearly incorrect, Your Honor, because what this says is that a quorum, I mean, Section 7 clearly says a quorum is necessary for the corporation to do any action. It doesn't specify what action. A quorum is necessary, and these parties specifically defined, knowing there were only two directors, specifically defined a quorum as a majority of the number of directors designated in the bylaws, not present at a meeting. And I would point out, for example, that Article 3, Section 1 has the same language. A majority of the board of directors may establish reasonable compensation for services of officers and others. If their interpretation is correct, Mr. Rao, as an individual, could have set a salary of a million dollars if he wanted to, and all future boards would be bound by that because they could never get a majority vote to overrule it. So the point is that these bylaws clearly are structured to require unity of agreement, and if there isn't, then the two have to sit down and work something out. There is no, as we pointed out in our brief, there's no provision in any of these bylaws for a buyout, for a resolution of a deadlock, any methodology to do that. So they either do it voluntarily or a court does it. But to suggest that because of that, one shareholder, one director, could hijack this corporation in perpetuity is an absurd result. And courts don't stand for absurd results. And if they wanted that, I mean, they previously said in Section 6 that without a quorum, a majority of the directors present may adjourn the meeting at any time without further notice. So the directors of these bylaws well knew the difference between, say, a majority of the board, which by definition requires a quorum, which by definition is two, the difference between that and the difference between a majority present at a meeting, which could be one, and was in this case. If that's what they wanted, that language should have been put in paragraph Section 8. I mean, there's multiple provisions in these bylaws talking about authority and actions the board can take, and not a single one of them says that it can be done without a quorum other than adjourning a meeting. So why Section 8 would be picked up and say you can take that action without a quorum but not Section 1 or multiple other provisions of these bylaws? They knew how to say action can be taken by one director present at a meeting without the other director. They said it in Section 6, and they said the only thing you can do is adjourn the meeting to avoid the precise situation we have here. They did not say that in Section 8. And the bylaws clearly say that this corporation can, I mean, obviously, it's axiomatic, that a corporation can only act through its board of directors. Any action outside the authorization of the board of directors is ultraviolet. And this lawsuit is ultraviolet. This appeal is ultraviolet. This appeal was filed in September of 2018, five months after the next annual day. Even if this vacancy appointment was valid, which it clearly wasn't, it had to have expired at the next annual shareholders' meeting in April. He didn't show up. He nevertheless continues to say, I guess this vacancy appointment is still valid. And apparently in September, six months, five months later, apparently this court board of his authorizes this appeal, authorizes continued retention of counsel, payment of God knows what to finance this litigation, half of which might find his name, Robert. This is half her corporation, and he has stolen it from her, flat out stolen it. And bylaws don't allow for that. And this court, the circuit court recognized that and said it ain't going to happen. And we would ask this court to affirm that and say, we agree, it's not going to happen. You had no authority to do that. And every action taken since that time has been ultraviolet, including the filing of the suit. And that's why those counsels purportedly brought the name of Behrs are subject to 619 dismissal, which the circuit court did. Thank you, counsel. Thank you. Rebuttal. The issue before this court is a narrow one. The question before this court is not about some alleged hijacking of a corporation. Shareholders do have rights. And to the extent that there is a dispute being brought by the shareholders, they have the ability to raise those claims. And, in fact, as you pointed out, Your Honor, they are. They are pending in the circuit court. That's not the question here today. The question here today is, under the bylaws, did Mr. Rowell have the ability to appoint a director to the board? And if he did, then the claims brought by the corporation in the circuit court were improperly dismissed. Now, counsel has pointed to several different provisions in Article III, and the incredibly important language included in those provisions that establishes exactly why Mr. Rowell's actions here are authorized under the bylaws. Article III, Section 6, which discusses a quorum, specifies that the quorum is constituted for transaction of business, quote, at any meeting. Article VII or, excuse me, Article III, Section 7, the manner of acting, the act of the majority of directors present, quote, at a meeting. Section 8 does not include that language. Language about how the board or how the shareholders are required to act in the context of a meeting is separate from the language in Section 8, which defines how a board member may act outside of a meeting. They are separately defined, and that is not an accident. The bylaws of this corporation were written in a specific way. It is unambiguous, and it is intended to avoid the type of situation we have now where a corporation would not be able to conduct any business at all if there were no way for a new board member to be appointed. Yeah, but for how long, counsel? Mr. Terlizzi argued that, look, you know, there's been an annual shareholders' meeting or two perhaps. I don't know if the past has started. And Mr. Rao just simply doesn't show up. Aside from that information all being, as you noted, Your Honor, entirely outside of the record, that is precisely why the parties have the right, the shareholders have the right, to take action in the trial court and bring those claims, and they have. This case ended up in the appellate court because there was an issue related to whether or not the corporation could also proceed in a claim. Does the corporation have the right to sue a former shareholder for breach of fiduciary duty? The corporation absolutely should have that right in the same way that a shareholder should also have the right to sue in this type of situation. If there needs to be some sort of a derivative claim brought by the shareholders, shareholders have that ability, but what is the attempt here is to make it impossible for the corporation to elect to move forward on a claim against a shareholder. That would be as inequitable as the argument being raised by the other shareholder here, that her corporation has been hijacked from her. What about all of the events which transpired as a result of Mr. Attridge's conduct? The court doesn't need to resolve those allegations. That's not the issue pending before this court. The question is whether or not the corporation should be allowed to proceed on those claims, and it should, and it can, as a legal matter pursuant to the language of the bylaws. Now, one last thing is important to note here. Counsel was suggesting, look at Article III, Section 1. The business of the corporation shall be managed by or under the direction of its board of directors, a majority of the board of directors may establish reasonable compensation. Counsel suggested, well, what happens if the board decides a million dollars is the appropriate compensation? Are we stuck with that result? That would surely be ridiculous. Counsel is correct, and that's why the language included in that particular provision specifies reasonableness. It needs to be a reasonable salary, and my point is that these are considerations that the drafters of these bylaws took into account. These are not haphazard. These are not words that were randomly thrown on a page. They were deliberately selected. The phrase, at a meeting, is deliberately omitted from Section 8. The phrase reasonableness, the term reasonableness, is deliberately included in Article III, Section 1. This court, based on that language, should conclude that Mr. Rowell absolutely and unambiguously had the right to make the appointment he made here, and because he did, the corporation has standing to proceed in its underlying claims. The circuit court's ruling to the contrary should be reversed. Are there any other questions? Going back to Article III, Section 6, when you're talking about the quorum in that it talks about to transact business, I'm assuming what you're meaning is the transaction of business is totally different from the filling of a board member's position, correct? That's correct. The filling of a board member's position is not the transaction of business. It's not the determination of how the corporation is going to make a decision about, for example, purchasing a building or hiring employees, whatever the business of the corporation would be. That's not what is discussed in Section 8. That's exactly right, Your Honor. And just one last point to what you were saying, Your Honor, that's why the phrase, at any meeting, immediately follows the phrase, the transaction of business. It is all of one. It is of one piece. The transaction of business at any meeting, that's not the situation we have here. Thank you, counsel, for your arguments. The court will take this matter under advisement and render a decision in due course.